UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JOSHUA GARRETT, GREGORY TATE, MICHAEL REID, CORY MATTHEWS, JOSEPH TODD WILLOCKS and RUSSELL WILLOCKS, *individually and on behalf of others similarly situated*, | ) ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) ) | Case No. 1:09-cv-325 Collier/Lee |
| EXCEPTIONAL PERSONNEL, INC. and D. A. TECHNOLOGIES, INC., | ) ) ) | Collective Action |
| Defendants | ) | |

## THIRD AMENDED COMPLAINT

Come Plaintiffs, individually and upon behalf of other persons similarly situated, by and through their attorneys, and for their Third Amended Complaint would show the Court as follows.

**I. THE PARTIES**

1. Plaintiff Garrett is a resident of Rossville, Walker County, Georgia.

2. Plaintiff Gregory Tate is a resident of Soddy Daisy, Hamilton County, Tennessee.

3. Plaintiff Michael Reid is a resident of Soddy Daisy, Hamilton County, Tennessee.

4. Plaintiff Cory Matthews is a resident of Soddy Daisy, Hamilton County, Tennessee.

5. Plaintiff Joseph Todd Willocks is a resident of Soddy Daisy, Hamilton County, Tennessee.

6. Plaintiff Russell Willocks is a resident of Chattanooga, Hamilton County, Tennessee.

7. Defendant Exceptional Personnel, Inc. ("Exceptional") is a foreign corporation that, all times relevant to this action, was doing business in Hamilton County, Tennessee.

8. Defendant D.A. Technologies, Inc. ("DA") is a foreign corporation that, at all times relevant to this litigation, was doing business in Hamilton County, Tennessee.

9. Defendants, at all times relevant to this litigation, were "employers" within the meaning of § 203 of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

10. Plaintiffs have executed consents to proceed as plaintiffs in this case, and these consents are being filed herewith.

## II. NATURE OF THE ACTION

11. This is an action to redress systemic violations of the Fair Labor Standards Act, as amended.

12. Plaintiffs bring this action on behalf of themselves and other similarly situated individuals as a "collective action", pursuant to 29 U.S.C. §216(b).

## III. JURISDICTION

13. The actions complained of herein took place in Hamilton County, Tennessee.

14. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

A. <u>2006 and 2007 Employment with Exceptional and DA</u>

15. Plaintiffs began employment with DA and Exceptional installing cable television equipment. These installations, and those performed by similarly situated individuals, took place

in Chattanooga, Tennessee and surrounding areas. Plaintiffs' approximate dates of employment with Defendants are as follows:

| | |
|---|---|
| Plaintiff Garrett: | mid 2007-January 2009; |
| Plaintiff Tate: | February 2007- June 2009; |
| Plaintiff Reid: | May 2006-April 2009; |
| Plaintiff Matthews: | June 2008-August 2009; |
| Plaintiff Joseph Todd Willocks: | November 2006-May 2008; and |
| Plaintiff Russell Willocks: | December 2005-August 2009. |

16. During the relevant period, Exceptional employed personnel that it would "lease" to DA for the purposes of installing cable equipment. Plaintiffs and others similarly situated were among these "leased" employees.

17. Though Exceptional handled various Human Resources functions relating to Plaintiffs' employment during their tenure with Exceptional and DA, the cable installation work performed by Plaintiffs and others similarly situated was performed solely for DA, for the benefit of it and its customers, and under its sole instruction, direction, and control.

18. In reality, Plaintiffs were employees of DA, although DA and Exceptional misleadingly classified them as employees only of Exceptional. At most, DA and Exceptional were joint employers of Plaintiffs and all others similarly situated.

19. Plaintiffs, and others similarly situated, installed cable equipment for *only* DA during their employment, and were in fact forbidden to install equipment in the employment of other entities.

20. Upon commencement of their employment with Exceptional and DA, Plaintiffs and similarly situated employees were given the choice of being classified as "W-2" employees (at lower "piece-work" rates) or as "1099 Independent Contractors". Regardless of the classification chosen, the duties performed and hours worked were identical. Given that the nature of Plaintiffs' duties properly classified them as "employees", any agreement made by them to be classified as "independent contractors" would be void and unenforceable.

21. Plaintiffs received training from DA in the proper installation of cable equipment. This training was also provided to similarly situated employees.

22. DA controlled the relevant training, instructing its employees on when and by whom they would be trained.

23. Throughout 2006 and 2007, much of the equipment required for Plaintiffs to successfully perform their duties was provided to Plaintiffs and other similarly situated individuals by Exceptional and/or DA.

24. Among the equipment utilized was a vehicle weighing less than 10,000 pounds and equipped with a "D.A. Technologies" logo. Plaintiffs utilized these vehicles at all times relevant to this action.

25. At no time relevant to this action did Plaintiffs operate a vehicle weighing in excess of 10,000 pounds.

26. Throughout 2006 and 2007, Plaintiffs and other similarly situated individuals were required to wear a uniform with DA's logo.

27. Throughout 2006 and 2007, Plaintiffs and other similarly situated individuals were required to be at DA's facility at a fixed time to receive job assignments.

4
Case 1:09-cv-00325   Document 36   Filed 04/20/10   Page 4 of 8

28. Throughout 2006 and 2007, Plaintiffs routinely worked in excess of 40 hours per week at the instruction, and for the benefit, of Exceptional and DA.

29. All work performed by Plaintiffs and other similarly situated individuals throughout 2006 and 2007 was compensated on a "piece work" basis. In other words, Exceptional and DA paid per-job at a flat rate without regard to the time it took to actually perform the job.

30. Plaintiffs, and other similarly situated individuals, never received overtime compensation for these hours worked in excess of 40 per week.

B. 2008 Employment

31. At the beginning of 2008, DA and Exceptional ended their business relationship.

32. Upon the termination of this relationship, DA converted and reclassified all previously "leased" employees, including Plaintiffs and those similarly situated, as "independent contractors".

33. Despite this "reclassification", Plaintiffs' job duties, and those of others similarly situated, did not change.

34. After this reclassification, DA maintained the same exclusive control over Plaintiffs' employment, and the employment of others similarly situated, described in paragraphs 15, and 17-20.

35. After being reclassified as "independent contractors", Plaintiffs, and others similarly situated, routinely, and throughout 2008, worked in excess of 40 hours per week.

5

36. After the reclassification, DA continued to compensate Plaintiffs and those similarly situated on a "piece work" basis without regard for the actual time required to complete each job.

37. Plaintiffs, and others similarly situated, never received overtime compensation for these hours worked in excess of 40 per week.

C. <u>2009 Employment</u>

38. Beginning in late 2008 or early 2009, DA, at the insistence of its largest customer, Comcast, began classifying all of its installers as "employees" instead of independent contractors.

39. Despite this further reclassification, Plaintiffs' duties and hours, as well as those of similarly situated individuals, did not change.

40. Plaintiffs routinely worked in excess of 40 hours per week after this reclassification.

41. DA continued in its refusal to pay overtime compensation after this reclassification.

42. Prior to the late 2008/January 2009 reclassification, Defendants failed to maintain accurate time records on Plaintiff and other individuals similarly situated.

**V. CAUSES OF ACTION**

43. Until the termination of their business relationship, Defendants were joint employers, within the meaning of the FLSA, of Plaintiffs and others similarly situated.

44. Defendants' refusal to pay overtime compensation to Plaintiffs and similarly situated individuals is in violation of 29 U.S.C. § 207.

45. Defendants' refusal to maintain accurate time records is in violation of 29 C.F.R. § 516.

46. Defendants' refusal to pay overtime compensation and all other violations of the FLSA were at all times willful.

## VI. PRAYER FOR RELIEF

47. Plaintiffs, on behalf of themselves and others, seek injunctive and declaratory relief, overtime compensation for all hours worked in excess of 40, liquidated damages, penalties and interests as permitted by applicable law, and attorney's fees and costs.

WHEREFORE, Plaintiffs accordingly pray for the following relief:

a. An Order pursuant to 29 U.S.C. §216(b) allowing Plaintiffs to proceed on behalf of all similarly situated persons, including present and former employees of Defendants, for purposes of the relief sought under the Fair Labor Standards Act;

b. Appropriate relief, including back pay, overtime compensation, and liquidated damages, under the Fair Labor Standards Act;

c. Attorneys fees and litigation expenses under all applicable statutes;

d. Prejudgment interest; and

e. All such further relief to which Plaintiff may be found entitled.

BURNETTE, DOBSON & PINCHAK

By: s/ Donna J. Mikel
Frank P. Pinchak, BPR No. 02094
Donna J. Mikel, BPR No. 020777
Doug S. Hamill, BPR No. 22825
Attorneys for Plaintiff
713 Cherry Street
Chattanooga, TN 37402
Phone: (423) 266-2121
Fax: (423) 266-3324

CERTIFICATE OF SERVICE

The foregoing pleading has been filed electronically using the Court's CM/ECF system. Interested parties can access this document via the Court's CM/ECF system.

This 20th day of April, 2010.

By: s/ *Donna J. Mikel*